UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
COURT FILE NO: CV-

| | |
|---|---|
| DINA WRIGHT<br>        Plaintiff<br>v.<br><br>A-1 TOWING AND RECOVERY, LLC<br>d/b/a A-1 TOWING AND RECOVERY<br>   And<br>PELICAN AUTO FINANCE, LLC<br>   And<br>WESTLAKE FINANCIAL SERVICES, LLC<br>   And<br>JOHN DOE REPO-MAN<br>        Defendants | ) CIVIL ACTION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

**A. JURISDICTION AND VENUE**

1. Jurisdiction of this Court arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. section 1692 *et seq* (hereinafter "FDCPA"), Pennsylvania Fair Credit Extension Uniformity Act, 73 Pa.C.S. 2270.1 *et seq* (hereinafter "FCEUA") and Pennsylvania Unfair Trade Consumer Protection Law, 72 Pa.C.S 201-1, *et seq* (hereinafter "UTCPL"), which prohibit debt collectors from engaging in abusive, false, deceptive, misleading and unfair practices, 28 U.S.C. sections 1331, 1337(a), together with the pendent jurisdiction of the court. Supplemental jurisdiction over Plaintiff's state law claims is granted by 28 U.S.C. section 1367(a). Declaratory relief is available pursuant to 28 U.S.C. sections 2201 and 2202.

2.     Venue is proper in this District because the acts and transactions occurred here and Plaintiff resides within this district.

**B.     PARTIES**

3.     Plaintiff, Dina Wright ("Plaintiff") is a natural person residing in Schuylkill County, Pennsylvania. Plaintiff is a consumer within the meanings of the FDCPA, 15 U.S.C. § 1692a(3) and the FCEUA, 73 P.S. § 2270.3. Because Plaintiff is allegedly obligated to pay a debt that is the subject of this case that was primarily used for family, personal or household purposes, namely, an alleged default of a motor vehicle financing agreement, she is a consumer within the meaning of FDCPA, 15 U.S.C. § 1692a(3) and FCEUA, 73 P.S. § 2270.3 and the UTPCPL 72 Pa.C.S 201-1.

4.     Defendant, Pelican Auto Finance, LLC ("Pelican") is upon information and belief, a corporation, engaged, inter alia, in the business of financing the purchases of motor vehicles located in Chadds Ford, Pa and at all times relevant herein conducted business in the Commonwealth of Pennsylvania where it regularly orders repossession of automobile vehicles that it believes the owners are in default of their loan obligations, and, at all times relevant hereto, acted by and through an agent, employee, workman or contractor of Pelican within the course and scope of their employment and is liable to Plaintiff under the UTCPL, the FCEU, the Pa. UCC and other common law causes of action in that, inter alia:

    a)     Pelican uses or employs persons to use tow vehicles as an instrumentality of interstate commerce in its business the principal purpose of which is the enforcement of security interest.

    b)     Pelican, by and through its agents, employees or workmen, breached the peace to effectuate a repossession and lost any present right to the collateral

securing plaintiff's debt.

 (c) Pelican had no present right to the vehicle.

 5. Defendant, Westlake Financial Services, LLC ("Westlake") is upon information and belief, a limited liability corporation, engaged, inter alia, in the business of automobile financing located at 4751 Wilshire Boulevard, Suite 100, Los Angeles, California 90010 and at all times relevant herein conducted business in the Commonwealth of Pennsylvania. Upon information and belief, Plaintiff's account with Pelican was assigned to or purchased by Westlake or Pelican merged with Westlake or is a subsidiary of Westlake and, therefore, is liable for the actions of A-1, John Doe Repo Man and Pelican at all times relevant hereto, acted by and through an agent, employee, workman or contractor in the scope and course of their employment within the course and scope of their employment.

 6. Defendant, A-1 Towing & Recovery, LLC ("A-1"), is, upon information and belief, a Pennsylvania Limited Liability Corporation with a principal place of business at 353 N Susquehanna Trail, Selinsgrove, PA 17870. A-1 is in the business of regularly collecting debts through automobile repossession in the Commonwealth of Pennsylvania, and, at all times relevant hereto, acted by and through its employee who actually effected the repossession and are collectively referred to herein as "the repo man" and acted within the course and scope of their employment. At all times relevant hereto A-1 acted within the course and scope of its employment and/or contract as an agent, employee, workman or contractor of Pelican and/or Westlake, and is a debt collector pursuant to 15 U.S.C. section 1692a(6) and FCEUA, 73 P.S. § 2270.3 in that, inter alia:

a) A-1 uses or employs persons to use tow vehicles as an instrumentality of interstate commerce in its business the principal purpose of which is the enforcement of security interest.

b) A-1, by and through its agents, employees or workmen, breached the peace to effectuate a repossession and lost any present right to the collateral securing plaintiff's debt.

c) A-1 had no present right to the vehicle.

7. John Doe Repo Man ("collectively referred with A-1 as "The Repo Man") is a natural individual and an agent or employee of Defendant A-1 whose name will be substituted upon identification.

8. At all times relevant hereto, Defendant Pelican contracted with Defendant A-1 Towing to repossess Plaintiff's motor vehicle.

9. At all times material and relevant hereto, Defendants are jointly, severally, individually, vicariously and/or equitably liable to Plaintiff.

10. At all times relevant hereto, Defendants acted by and through their agents, officers, contractors, servants, workmen and/or employees, who acted within the scope of their authority and within the course of their employment and had no present right to possession of the property (motor vehicle) claimed as collateral through an enforceable security interest.

11. Defendants, at all times relevant hereto, were persons who used an instrumentality of interstate commerce or the mails in a business the principal purpose of which was the collection of debts, who regularly collected or attempted to collect, directly or indirectly, debts owed or due asserted to be owed or due another, and/or who, in the process of collecting its own

debts, used a name other than its own which would indicate that a third person was collecting or attempting to collect such debts.

## C.     FACTUAL ALLEGATIONS

### a)     Unlawful repossession

12.     Prior to the events hereinafter described, Plaintiff purchased, a 2006 Ford F-150 Super Cab ("Vehicle") pursuant to the terms of a Retail Installment Sales Contract ("RISC") financed by Pelican and held either by Pelican and/or Westlake.

13.     On or about 6/17/2017 at approximately 11:40 pm, Plaintiff was just leaving her home to walk her Labrador Retriever ("The Dog") when she approached the street and observed A-1's Tow Truck.

14.     Plaintiff observed the truck pulling up in front of her house and next to her vehicle, the Ford F-150, which was parked outside Plaintiff's home.

15.     Plaintiff approached the repo man who was sitting in the Tow Truck with an open window and informed him that it was her vehicle and asked if he could provide identification and documentation regarding the possible towing.

16.     The repo man refused to respond so Plaintiff told the repo man not to take her vehicle and to leave.

17.     Despite Plaintiff's admonition not to take her vehicle, the repo man quickly jumped down from the tow truck and moved toward Plaintiff shouting at her to back away from the tow truck or he was going to taze her and her dog.

18.     Plaintiff's dog became excited so Plaintiff asked if the repo man could wait so she could put her dog in the house and come out and get her personal belongings in the vehicle.

19. Despite that, the repo man grabbed the tow hook and headed toward the front of Plaintiff's vehicle where Plaintiff was standing.

20. Plaintiff became fearful of a confrontation and moved away from her vehicle to stand on the curb.

21. The repo man then began attaching the tow hook to the front of Plaintiff's vehicle and began screaming obscenities at Plaintiff including but not limited to commanding her to back the F*** up to her porch and threatened to call the police.

22. The repo man's actions caused Plaintiff's dog to become excited and his leash to become tangled in the winch line of the tow truck causing the dog to begin loudly yelping.

23. Plaintiff then knelt down to attempt to untangle the leash but the repo man went to the back of the truck and said he was taking the truck whether Plaintiff or her dog was there or not.

24. Despite again being told by Plaintiff to stop and the dog becoming entangled, the repo man further tightened the winch.

25. Plaintiff frantically tried to pry the dog loose as he choked so badly he began to vomit blood.

26. Plaintiff cried for the repo man to stop but he failed and refused to do so.

27. The repo man continued to tighten the winch line causing the dog to be pulled off of his feet and into the air.

28. The tightening of the winch caused the leash to snap and free the dog.

29. When Plaintiff's boyfriend began hearing the commotion above the sound of the air conditioner and the TV, he immediately came running from Plaintiff's home. Another neighbor also came out due to the commotion.

30. The disturbance, tumult and commotion caused by the repo man's actions resulted in the dog biting Plaintiff's boyfriend.

31. As a result of the repo man's actions and Plaintiff's attempts to free him, Plaintiff sustained cuts and bruises on her legs, arms and thumb which had gotten caught while Plaintiff was trying to untangle her dog.

32. As a result of the repo man's actions, Plaintiff ended up calling the police who told Plaintiff to turn over her keys to the repo man.

33. The police told Plaintiff to take what she could from the vehicle and that Plaintiff would be notified by the repo man that she could recover the rest of her personal property upon notification by the repo man who left with the vehicle and the remainder of her personal belongings.

34. Defendants never sent any notice of where the car was stored or any other post repossession, required notices under the UCC and Motor Vehicle Sales Finance Act.

35. Plaintiff was unable to recover most of her personal belongings from the vehicle.

36. At no point did the repo man heed Plaintiff's instructions to leave the vehicle and stop the repossession.

37. At no point did the Repo man stop the repossession when Plaintiff's dog became entangled with the winch.

38. Any right to possession of the vehicle dissolved upon Defendant's breach of the peace.

39. As a direct and proximate result of the wrongful repossession caused by Defendants, Plaintiff suffered actual damages in the form of contusions, abrasions, cuts, loss of

personal property, emotional distress, anxiety, embarrassment, fear, and sleeplessness, among other negative emotions.

**D. CAUSES OF ACTION**

**COUNT I**
**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")**
**(Plaintiff vs. A-1 and John Doe Repo Man)**

40. Plaintiff incorporates the allegations above as though set forth at length herein.

41. The non-judicial repossession process is inherently dangerous activity and inherently involve the risk of confrontation and violence.

42. At all times relevant hereto, the debt was incurred for personal, family or household purposes and is a debt" as defined by 15 U.S.C.§ 1692a(5).

43. At all times relevant hereto, Defendants were acting as a "debt collector" as the term is defined by 15 U.S.C. §1692a(6).

44. Defendants, by their conduct as described above, violated the FDCPA as follows:

   a) §1692d engaging in conduct the natural consequence of which is to harass, oppress, or abuse a person;

   b) §1692d (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person;

   c) §1692d (2) The use or threat of use of profane language or other abusive language;

   d) §1692f, by use of any unfair or unconscionable means to collect or attempt to collect the alleged debt;

   e) §1692f(6)(a) Taking any nonjudicial action to effect dispossession or disablement of property when there is no present right to possession of the

        property claimed as collateral through an enforceable security interest due to breach of the peace.

    f)    §1692f(6)(C) by taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if the property is exempt by law from such dispossession or disablement.

45.    As a direct and proximate result of the Defendants illegal collection efforts, Plaintiff was has suffered damages in the form of physical injuries, mental anguish, emotional distress, anger, anxiety, frustration, fear, loss of sleep, embarrassment and humiliation, the unlawful taking of Plaintiff's vehicle and personal property.

46.    Plaintiff has been seriously damaged by Defendants' violations of the FDCPA and is entitled to actual damages, compensatory damages, costs and attorneys' fees in accordance with 15 U.S.C. § 1692k.

WHEREFORE, Plaintiff, Dina Wright prays that judgment be entered against Defendants, individually, jointly and severally, for actual damages, compensatory damages, statutory damages, reasonable attorney's fees and costs permitted under 15 U.S.C. § 1692k and such other and further relief that the Court deems just and proper.

**COUNT II**
**VIOLATION OF PENNSYLVANIA UNIFORM COMMERCIAL CODE ("U.C.C.")**
**(Plaintiff v. All Defendants)**

47.    Plaintiff incorporates the allegations above as though set forth at length herein.

48.    The "repossession" of the subject vehicle by defendants which is collateral for the debt falls within the definition of "consumer goods" contained in 13 Pa. C.S.A. § 9102. The transaction in question was a consumer-goods transaction in that Plaintiff owed the obligation primarily for personal, family or household purposes, and the collateral was consumer goods.

Once a breach of the peace occurred, any license or justification for the secured party to repossess ceases. 13 Pa. C.S.A. § 9609.

49. In the course of the transaction with Plaintiff, Defendants violated the provisions of Article 9 of the U.C.C., and Section 623 of the Motor Vehicle Sales Finance Act, including, but not limited to committing a breach of the peace in the repossession process of the subject Vehicle in violation of 13 Pa. C.S.A. § 9503 by:

    a) Harassing, oppressive and abusive behavior described above;

    b) Refusing to cease the repossession process by refusing to release the vehicle, despite the vehicle being wrongfully repossessed;

    c) By intimidating Plaintiff;

    d) By threatening to physically assault Plaintiff;

    e) Using profanity.

50. In addition to the UCC, upon information and belief, the vehicle was purchased using a Retail Installment Sales Contract, ("RISC") provided by Pelican. The subject RISC is governed by the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA").

51. The MVSFA imposes liability on the holder of the subject RISC, for the illegal acts of its repossession agents.

52. Defendants further violated the UCC and MVSFA by failing to provide Plaintiff with any notice, let alone a post repossession notice including but not limited to the date and location of an auction or sale of the vehicle, failed to provide Plaintiff with an accounting failed to notify her of her right to retrieve her personal belongings are violations of 13 Pa.C.S.A. § 9601 et seq. and/or Pennsylvania Motor Vehicle Sales Finance Act 69 P.S. § 623 and did not act

in a commercially reasonable manner in repossessing Plaintiff's vehicle under the UCC 13 Pa.C.S.A. § 9610.

53.    As a direct and proximate result of Defendants' violations as aforestated. Plaintiff suffered actual damages, emotional distress, loss of use of her vehicle and personal belongings and additional and/or in the alternative, statutory damages under 13 Pa. C.S.A. § 9625.

WHEREFORE, Plaintiff, Dina Wright, prays that judgment be entered against Defendants, individually, jointly and severally, for actual damages, compensatory damages, statutory damages, reasonable attorney's fees and costs and such other and further relief that the Court deems just and proper.

### COUNT III
### VIOLATIONS OF THE FAIR CREDIT EXTENSION UNIFORMITY ACT ("FCEUA")
### 73 P.S. § 2270.1 *et seq.*
### VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE CONSUMER PROTECTION LAW
### ("UTCPL"), 73 Pa. C.S § 201-1, et. seq.
### (Plaintiff vs. All Defendants)

54.    Plaintiff incorporates the allegations above as though set forth at length herein.

55.    Defendants Pelican and Westlake are "creditors" within the meaning of the FCEU and Defendants, A-1 and John Doe Repo-Man are "debt collectors" as defined by 73 P.S. § 2270.4 of the FCUEA.

56.    Plaintiff is a "consumer[s]" as defined by 73 P.S. § 2270.4 of the FCUEA.

57.    Insofar as the repossession of the subject vehicle involved a breach of the peace in violation of the UCC and the Pennsylvania Motor Vehicle Sales Finance Act (69 P.S. § 623(a)), terminated Defendants right to possession, the Defendants took the vehicle without right.

58.    Insofar above described breaches of the peace by A-1 terminated Defendants present right of repossession of the car as collateral, Defendants had no right to the vehicle's

possession insofar as neither the RISC nor the UCC or MVSFA permits non-judicial repossession of the vehicle in breach of the peace.

59. A violation of the FDCPA is a violation of the FCEU.

60. As a result of the continued wrongful repossession by Defendants, Plaintiff lost the unfettered use and enjoyment, loss of value of the vehicle, personal belongings and suffered emotional distress, physical injuries and damage to her credit rating, and reputation.

61. All of the above contacts by Defendants were "communications" relating to a debt as defined by 73 P.S. § 2270.3 of the FCEUA.

62. The foregoing acts and omissions of these Defendants constitute numerous and multiple violations, inter alia, of the FCEUA and UTCPL, including but not limited to 73 P.S. § 2270.4(a) as evidenced by the following conduct:

    a) Engaging in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt;

    b) The use of false, deceptive or misleading representations or means in connection with the collection of a debt;;

    c) The use of false representation or deceptive means to collect a debt or obtain information about a consumer;

    d) The use of unfair or unconscionable means to collect or attempt to collect an alleged debt;

    e) The use of obscene or profane language or language the natural consequence which is to abuse the hearer;

  f)  Taking or threatening to take any no judicial action to effect dispossession or disablement of property if: (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest.

63. Defendants acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law with the purpose of coercing Plaintiff to pay the debt.

64. As a result of the above violations of the FCUEA and UTCPL, Plaintiff has suffered ascertainable loss in the use of the vehicle and loss of her personal belongings, entitling her to an award of statutory, actual, compensatory and treble damages and attorney's fees and costs.

  WHEREFORE, Plaintiff, Dina Wright, prays that judgment be entered against Defendants, individually, jointly and severally, for actual damages, compensatory damages, treble damages, reasonable attorney's fees and costs and such other and further relief that the Court deems just and proper.

### COUNT IV – CONVERSION
**(Plaintiff v. All Defendants)**

65. Plaintiff incorporates the allegations above as though set forth at length herein.

66. Pursuant to the established business practices established and implemented by all the Defendants, without right or justification, Defendants took possession, dominion and/or control of Plaintiff's vehicle and personal belongings and denied Plaintiff use and quiet enjoyment thereof and withheld and refused to return it.

67. As a direct and proximate result of the Defendants' misconduct, Plaintiff was deprived of the use and enjoyment of the subject vehicle, the use and enjoyment of the amount

financed, will or has incurred costs and expenses for repairing her vehicle together with the other damages set forth above and below.

68. The Defendants individual and collective acts and/or omissions were substantial contributing factors and causes of violations of the duties set forth in this Count and to Plaintiff's indivisible harm and damages more fully described above and below, and render the Defendants jointly and severally liable to the Plaintiff.

69. The aforesaid actions of Defendants were malicious, wanton and reckless conduct, and in complete disregard for the health, safety and rights of Plaintiff; therefore, the acts of Defendants were negligent, malicious, outrageous, wanton, willful and reckless, thereby entitling Plaintiff to the imposition of punitive damages.

WHEREFORE, Plaintiff, Dina Wright, requests judgment against all Defendants, individually, jointly and/or severally in an amount in excess of Fifty Thousand Dollars ($50,000.00) including but not limited to actual damages, compensatory damages, punitive damages, costs and attorneys' fees and any other relief that this Honorable Court deems just and appropriate.

### COUNT V – TRESPASS TO CHATTELS
**(Plaintiff v. All Defendants)**

70. Plaintiff incorporates the allegations above as though set forth at length herein. .

71. Defendants intentionally and voluntarily interfered with Plaintiff's ownership and use of her personal property and intentionally and voluntarily refused to return said personal property and with notice and objection that the trespass was forbidden.

72. At the time and after the repossession, Plaintiff owned the subject personal property and was the only one with a present right of possession.

73. Defendants trespassed without right or privilege.

74. The acts of Defendants were malicious,

75. As a direct and proximate result of the assault by A-1, Plaintiff suffered actual damages in the form of contusions, abrasions, cuts, emotional distress, anxiety, embarrassment, fear, and sleeplessness, among other negative emotions.

76. As a direct and proximate result of Defendants' actions, Plaintiff was deprived of her personal belongings as well as her vehicle.

77. The aforesaid actions of Defendants were malicious, wanton and reckless conduct, and in complete disregard for the health, safety and rights of Plaintiff; therefore, the acts of Defendants were negligent, malicious, outrageous, wanton, willful and reckless, thereby entitling Plaintiff to the imposition of punitive damages.

WHEREFORE, Plaintiff, Dina Wright, requests judgment against all Defendants, individually, jointly and/or severally in an amount in excess of Fifty Thousand Dollars ($50,000.00) including but not limited to actual damages, compensatory damages punitive damages, costs and attorneys' fees and any other relief that this Honorable Court deems just and appropriate.

### COUNT VI - ASSAULT and BATTERY
### Plaintiff v. Defendants

78. Plaintiff incorporates the allegations above as though set forth at length herein.

79. While acting in the course and scope of his duties for Defendant, Pelican and A-1, John Doe Repo Man threatened to assault Plaintiff using a Tazer on her and acted with the unprivileged intent to put Plaintiff in reasonable and immediate apprehension of harmful and offensive conduct and did, in fact, cause such apprehension.

80. The assault was unprovoked and in no manner whatsoever due to any act or failure to act on the part of Plaintiff other than exercising her right to refuse to consent to the taking of her vehicle.

81. Defendants actions in continuing to lift the vehicle on the winch, despite knowing that Plaintiff's dog was entangled in the winch and that Plaintiff was attempting to free the dog from the entanglement resulted in Plaintiff's thumb getting stuck and suffering physical injuries as afore-described.

82. As a direct and proximate result of the assault and battery, Plaintiff suffered actual damages in the form of contusions, abrasions, emotional distress, anxiety, embarrassment, fear, and sleeplessness, among other negative emotions and incurred medical expenses.

83. The aforesaid actions of Defendants were malicious, wanton and reckless conduct, and in complete disregard for the health, safety and rights of Plaintiff; therefore, the acts of Defendants were negligent, malicious, outrageous, wanton, willful and reckless, thereby entitling Plaintiff to the imposition of punitive damages.

WHEREFORE, Plaintiff, Dina Wright, requests judgment against all Defendants, individually, jointly and/or severally in an amount in excess of Fifty Thousand Dollars ($50,000.00) including but not limited to actual damages, compensatory damages, punitive damages, costs and attorneys' fees and any other relief that this Honorable Court deems just and appropriate.

### COUNT VII – Negligence
**(Plaintiff v. Defendants)**

84. Plaintiff incorporates the allegations above as though set forth at length herein.

85. Non-judicial repossessions are inherently dangerous and include the foreseeable risk of confrontation, violence and tortious acts.

86. Defendants had a non-delegable duty to ensure that any non-judicial repossession would be effectuated in accordance with the law and without a breach of the peace.

87. In order to fulfill its non-delegable duty to guarantee that any non-judicial repossessions were effectuated in accordance with the law and without a breach of the peace, had a duty to exercise reasonable care in the hiring and use of repossession agencies and agents.

88. Defendants breached its non-delegable duty in the following manner, inter alia:

   a) Failing to investigate properly or obtain adequate assurance that all agencies and agents were certified by a reputable organization.

   b) Failing to investigate properly or obtain adequate assurance that all agencies and agents knew, understood and operated according to the applicable laws, including the law against breaching the peace;

   c) Failing to investigate properly or obtain adequate assurance that all agents received adequate training and were subject to adequate supervision;

   d) Failing to investigate properly or obtain adequate assurance that all agencies and agents employed adequate recordkeeping procedures;

   e) Failing to investigate properly or obtain adequate assurance that all agencies and agents had adequate written guidelines for the performance of their jobs and for effectuating repossessions;

   f) Failing to have adequate written guidelines regarding how repossessions must be effectuated to avoid breaches of the peace.

   g) Failing to have adequate knowledge of the law and regulations related to self-help or non-judicial repossessions, including not breaching the pease and consumer rights to resist;

   h.) Failing to adhere to the laws and regulations requiring non-judicial repossessions may only be effectuated without a breach of the peace and without conflict or objection.

89. Defendant A-1, as employer and/or contractor of Defendant DOE, was responsible for hiring, training and supervising Defendant DOE with respect to their repossession activities undertaking on behalf of Defendants Pelican and Westlake.

90. Defendant A-1 had a duty to train and supervise Defendant DOE so that he would act in accordance with all applicable laws, and with due regard for the rights, health and safety of the public with whom they would interact on behalf of their employers.

91. Defendant DOE had a duty to know and to follow the laws regulating self-help or non-judicial repossessions.

92. Defendant DOE breached his duty of reasonable care by not knowing or following the laws regulating self-help or non-judicial repossessions, including harassing and threatening Plaintiff and ignoring her demands that he stop breaching the peace and harming her dog and her.

93. Defendants actions as aforestated show that Defendants do not now or have never investigated or obtained adequate assurance of some or all of the following:

   a) That its agents were certified by a reputable organization;

   b) That its agents knew, understood and operated according to the applicable laws, including the law against breaching the peace;

   c) That its agents knew, understood what is and is not a breach of the peace;

   d) That its repossession agents understands what is and is not a breach of the peace.

   e) That its agents do not have criminal backgrounds;

   f) Whether its agents carry weapons while performing self-help repossessions.

94. The Plaintiff, as owner and possessor of the subject vehicle, was owed the duty of proper hiring, training and/or supervision by Defendants.

95. As part of its training and/or supervision of Defendant DOE, upon information and belief, Defendant A-1 instructed and encouraged Defendant DOE to breach the peace in

furtherance of their repossession activities, by, among other things, ignoring consumer objections.

96. The aforesaid hiring, training and supervision encouraged negligent, malicious, wanton and reckless conduct, and was in complete disregard for the health, safety and rights of persons, including the Plaintiff; therefore, the acts of Defendants were negligent, malicious, wanton and reckless.

97. As a direct result of the aforesaid breach of duty Plaintiff suffered the injuries and damages set forth more fully above and below.

WHEREFORE, Plaintiff, Dina Wright, requests judgment against all Defendants, individually, jointly and/or severally in an amount in excess of Fifty Thousand Dollars ($50,000.00) including but not limited to actual damages, compensatory damages, punitive damages, costs and attorneys' fees and any other relief that this Honorable Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

By _____
Law of Michael P. Forbes, P.C.
By: Michael P. Forbes, Esquire
Attorney for Plaintiff